UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | |
|---|---|
| JORDAN QUEEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 3:14-cv-00519-DRH |
| Vs. | ) |
| | ) |
| W.I.C., INC. d/b/a SNIPER TREESTANDS | ) |
| and DUNHAM'S ATHLEISURE | ) |
| CORPORATION d/b/a | ) |
| DUNHAM'S SPORTS, | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF JORDAN QUEEN'S MOTION TO STRIKE DEFENDANT
W W INDUSTRIAL CORP.'S PLEADINGS AND BRIEF IN SUPPORT**

COMES NOW Plaintiff Jordan Queen, by and through his attorneys, Onder, Shelton, O'Leary & Peterson, LLC, and for his Motion to Strike Defendant W W Industrial Corp.'s Pleadings and Brief in Support, states:

**INTRODUCTION**

Defendant W W Industrial Corp., a/k/a WIC, Inc., time and again attempted to conceal and misrepresent its business contacts with the State of Illinois in an effort to deny this Court jurisdiction simply to avoid having to write a check to cover its $25,000 deductible. Astoundingly, this very same Defendant wrote such a check to settle a matter involving the same type of tree stand hunting product before this very Court in April 2014. Yet, W W Industrial Corp. had the audacity to not only deny having ever received any other claims or lawsuits but also deny it had been haled to this very Court this very year. That is just the tip of the iceberg in terms of Defendant's litany of sins.

1

The undersigned does not take moving for sanctions lightly and does not attribute scienter to Defendant W W Industrial's counsel, rather to Defendant and its corporate representative who perjured himself repeatedly. In this situation, striking WIC's pleadings is warranted where Defendant's misconduct was a blatant attempt to prevent Plaintiff Jordan Queen – an Illinois resident of this District injured in this District by Defendant's product purchased in this District – access to the Illinois courts. Indeed, by filing a non-meritorious motion to dismiss based upon lack of jurisdiction and supporting affidavit, and providing inaccurate, incomplete, and flat out untrue discovery responses and deposition testimony, Defendant was in essence seeking to strike Plaintiff's pleadings. That gamesmanship constitutes an outright fraud on the Court that cannot be tolerated.

**PROCEDURAL HISTORY AND BACKGROUND**

Plaintiff's Complaint was filed May 7, 2014 and alleges Defendant W W Industrial Corp.'s STLS41 "Sniper" brand tree stand bent causing Plaintiff Jordan Queen to fall from a tree while hunting resulting in serious injury. Defendant W W Industrial Corp. entered its appearance and filed it Motion to Dismiss Based Upon Lack of Personal Jurisdiction on June 23, 2014. (CM/ECF Doc. # 5). Plaintiff was granted leave to initiate discovery limited to the issue of personal jurisdiction and interrogatories and requests for production on that topic were served July 2, 2014. After an agreed extension, Defendant served its responses some nine weeks later on September 12, 2014.

In reviewing the responses compared with undersigned counsel's own research on the corporate defendant, it was apparent WIC's answers were woefully

deficient and simply untrue. After Plaintiff pointed out inaccuracies, Defendant agreed to supplement its answer. That supplementation took place a week later on September 19, 2014.

On September 5, 2014, Plaintiff served its general interrogatories and requests for production on Defendant. Responses to that discovery were received on October 6, 2014. Those too were deficient and untrue.

On October 28, 2014, WIC's owner and corporate representative, Nathan Stieren, was deposed in Minneapolis, Minnesota, on the issue of personal jurisdiction. By the end of the deposition, Mr. Stieren had acknowledged the bulk of Defendant's discovery responses (even after they had been supplemented) were untrue, inaccurate, or incomplete, after he was confronted with numerous documents that came to light as a product of the undersigned's own research.

Following the deposition, Defendant's counsel acknowledged the need to supplement WIC's discovery once again based upon the testimony of Mr. Stieren and withdrew WIC's motion to dismiss. That supplementation took place on December 2, 2014. Defendant had to simultaneously supplement its responses to Plaintiff's general interrogatories and requests for production due to multiple deficiencies.

Defendant's failure to disclose the information and produce responsive documents is unconscionable and cannot be chalked up to innocent mistake. What follows addresses the deficiencies and falsehoods in chronological order as opposed to magnitude of the misgivings.

## ARGUMENT

Plaintiff's initial interrogatories on personal jurisdiction requested the identity of all W W Industrial Corp. dealers in Illinois. (See WIC's Ans. to Int., No. 1, attached as Exhibit A). This interrogatory was submitted based upon the company website representing it had dealers "throughout the United States and Canada" and inviting consumers to submit a request for a "dealer locator search" that purported to generate a list of dealers according to area code. (See Sniper Tree Stands web page print outs, attached as Exhibit B; Stieren Depo, p. 17, attached as Exhibit C). In its initial answers to jurisdictional interrogatories, in response to the request to identify its Illinois dealers, Mr. Stieren equivocated between "dealer" and "customer." Mr. Stieren testified the company, despite representations to the contrary on its website, does not actually have what it characterizes as "dealers," defining that term for purposes of responding to Plaintiff's discovery as customers exclusively retailing Sniper Tree Stand products. (Ex. C, p. 18, 22). Mr. Stieren justified his original interrogatory answer of "none" when asked about dealers in Illinois based upon that self-serving characterization. *Id*. This is despite the fact Mr. Stieren testified consumers "may or may not" get a response identifying retail locations where they can purchase Sniper products when they submit an inquiry as to dealer locations in Illinois. (Ex. C., p. 18). This set the tone for the convoluted discovery responses that followed.

Defendant's jurisdictional interrogatories also requested WIC identify all customers with which it had contracted that have Illinois retail locations and the yearly sales to each. (Ex. A, No. 15). In response, WIC identified Menard's and

4

Dunham's as WIC's only customers from 2010 to present[1] with Illinois retail locations. (Ex. A, No. 15). Mr. Stieren admitted in deposition that is untrue. (Ex. C, p. 28). That is only the beginning of the untruths to come.

In terms of business dealing with these two customers, Defendant stated WIC shipped Dunham's:

- 18,054 product units in 2010;
- 44,364 product units in 2011;
- 40,285 product units in 2012; and
- 39,156 product units in 2013.

Defendant stated it shipped Menards':

- 29,996 units in 2012;
- 30,363 units in 2013; and
- 9,600 units in 2014.

(Ex. A, No. 15). As it turns out, this was a far cry from the true scope of business WIC conducts with customers retailing WIC's products from Illinois store shelves.

Fortuitously, Plaintiff had requested product registrations received by WIC from Illinois residents. In reviewing those documents, the undersigned found one to indicate a Sniper product was purchased at Bass Pro Shop, which the undersigned knew to have retail locations in Illinois. (See Bates numbered Doc. WWIC 0001, attached as Exhibit D). Plaintiff's counsel pointed this out to opposing counsel, who could not explain why Bass Pro would not have been included in WIC's discovery responses since Bass Pro has retail locations in Illinois. Defendant agreed to supplement. Had the undersigned not stumbled onto Bass Pro, a mountain of

---

[1] Nathan Stieren, owner and corporate representative of WIC, Inc., purchased the company in 2010 and asserts no knowledge of the business operations prior to that time.

information germane to personal jurisdiction would have gone undisclosed, in favor of WIC's scheme to wrongly deprive this Court of jurisdiction.

Plaintiff's supplementation included three additional WIC customers with Illinois retail locations, Bass Pro, Bucheit's, and Scheel's All Sports. (See WIC's 1st Supp. Ans. to PJ Int., No. 15, attached as Exhibit E). This comprised some 41,813 product units shipped to these retailers between 2010 and 2012. *Id*.

Defendant's initial discovery responses had failed to identify three of its five customers with retail locations in Illinois. *Id.* Significantly, for 2011, Defendant had failed to disclose nearly 40% of its product sales to customers with retail locations in Illinois. *Id*. Taking into account the product sales to the newly disclosed customers with Illinois retail locations, for 2011 over 60% of WIC's products went to customers with Illinois retail locations. *Id*. at No. 7, 15. Even this was woefully untrue with respect to the universe of WIC's customers with Illinois retail locations.

Defendant submits it has no idea where its products go once they get to the customer's distribution center and, thus, have no way of knowing if its products are retailed in Illinois. (Ex. C, p. 26). WIC's "duck our head in the sand" position is untenable. To investigate the extent of WIC's products ending up on Bass Pro and other Illinois retailers' shelves, the undersigned personally went to Bass Pro's East Peoria, Illinois, location on September 12, 2014. While there, Plaintiff's counsel identified numerous Sniper brand products on store shelves and in Bass Pro's "Treestand Buying Guide." More importantly, the undersigned found numerous WIC, Inc. products on store shelves and in Bass Pro's Treestand Buying Guide marketed under the name API Outdoors. Of course, WIC failed to disclose any

information or even acknowledge the existence of the API product line, its product sales, or any of its customers/retailers carrying the API brand. Defendant's deception was becoming a trend that would prove to continue.

Mr. Stieren testified WIC had not, as of the time of his deposition, done business or sold products under any name other than Sniper. (Ex C, p. 16). When subsequently confronted with API in deposition, Mr. Stieren initially claimed API Outdoors products are not WIC products, despite at the same time testifying WIC, Inc., manufactures them. (Ex. C, p. 64).

> Q: There are other WIC, Inc. products that you didn't tell me about, aren't there?
> A: Didn't tell you about?
> Q: In discovery.
> A: Not that I'm familiar with, I guess. If you asked me something – I don't know.
> Q: Tell me about API Outdoors.
> A: API Outdoors?
> Q: Yeah.
> A: We don't own that company. We manufactured some products for them.

(Ex C, p. 64). In reality, WIC was responsible for a whole lot more than just the manufacture of the API Outdoors product line.

Mr. Stieren seems to contend his company is not responsible for API products because WIC licenses the API Outdoors trade name from Bass Pro and, therefore, he chose not to disclose any information with respect to API. (Ex. C, p. 64-65, 67; see WIC's 2nd Supp. Ans. to PJ Int., No. 3, attached as Exhibit F). Furthermore, when supplementing its discovery responses for the second time after Mr. Stieren's deposition to disclose the API product line, WIC claimed it merely "organized" API product shipments. (Ex. F, No. 3). This is in spite of the fact: (1) Mr.

7

Stieren testified WIC manufactured the API products; (2) API Outdoors products are packaged expressly stating they are a product of WIC; (3) the API product manuals identify WIC as manufacturer; (4) the product manual is published by WIC; (5) WIC publishes the API catalogue; (6) the API product catalogue identifies the API products as WIC products; (7) WIC receives and is responsible for API Outdoors product registration and warranty claims; (8) WIC distributes many different API Outdoors products; (9) Mr. Stieren acknowledged in deposition WIC is part of the stream of commerce with respect to distribution of API products; (10) WIC's dealer application provides the applicant seeking to become a dealer of API products is applying for a WIC account; (11) the API products are manufactured at the same facility at which the Sniper products are manufactured; (12) WIC places API product orders; (13) Mr. Stieren personally inspects for defects the API products at the manufacturing facility prior to shipping (in the same fashion he does with respect to Sniper); (14) WIC took receipt of API product shipments at WIC's warehouse; (15) WIC is responsible for arranging API product distribution; (16) WIC receives revenues for the foregoing activities; (17) the API Outdoors website is virtually identical in format to that of Sniper Tree Stands; (18) the Sniper product manuals are consistent in form and substance with those of API; (19) the same mailing address is listed in the respective product manuals for both Sniper and API; (20) consumers are provided the same phone number to contact Sniper as they are API; and (21) Bass Pro's product catalog advertisements for API products are taken from WIC's product catalog for API. (Ex. C, p. 64-81; see API product manual cover, attached as Exhibit G; see Sniper product manual cover, attached as Exhibit H; see

8

WIC, Inc.'s 2013 API Outdoors Product Catalog, attached as Exhibit I; see WIC's API Outdoors Credit Application and Purchase Terms Agreement, attached as Exhibit J). Nonetheless, Mr. Stieren testified he "didn't really see [API Outdoors] as a connection with Sniper." (Ex. C, p. 65). WIC's and Mr. Stieren's obfuscation is relentless.

While WIC did not disclose even the existence of the API product line, the undersigned had determined prior to Mr. Stieren's deposition retailers other than Bass Pro carry WIC's API products. Cabella's in Hoffman Estates, Illinois, is one such retailer. (Ex. C, p. 70-71). As it turns out, according to Defendant's third effort to get its written discovery responses right, WIC has three customers with Illinois retail locations that have carried the API Outdoors product line, to include Cabella's, Dunham's Sports, and Bass Pro. (Ex. F, No. 3). These customers with Illinois retail locations received some 159,676 API product units from WIC between 2010 and 2013. *Id.*

When the undersigned asked Mr. Stieren in deposition about company records pertaining to API, Mr. Stieren claimed he had none. (Ex. C, p. 65). Upon subsequent questioning from his own attorney, Mr. Stieren's tune changed, acknowledging he is indeed in possession of API records. (Ex. C, p. 117-118). Defendant thereafter produced API records consisting of 86 pages detailing the API product line and API product shipments going back to 2010, despite testifying originally WIC had no such records. (WIC's 2nd Supp. Resp. to PJ RFP, Nos. 3, 7, 9, attached as Exhibit K).

9

Plaintiff still does not have a clear understanding of what brands WIC does business as. WIC's own Dealer Services Agreement to become a Sniper dealer provides WIC does business as "Remington Tree Stands." (WIC's Sniper Credit Application and Purchase Terms Agreement, p. 3, attached as Exhibit L). Mr. Stieren claims to have no knowledge of the Remington brand, despite it being identified on the <u>current</u> Sniper Credit Application and Purchase Terms Agreement. (Ex. C, p. 82-83). Only Mr. Stieren knows whether that is true among the myriad of untruths.

In written discovery, WIC originally claimed it has never had a manufacturer's representative serving Illinois. (Ex. A, No. 16, 21). Defendant's answers to personal jurisdiction interrogatories expressly stated "W W Industrial Corp. has not had any manufacturers' representatives in Illinois since 2010." *Id*. at No. 21. When impeached in deposition with evidence to the contrary, Mr. Stieren acknowledged a manufacturer's representative, Hudalla & Associates, indeed has represented and continues to represent WIC, and that they have two separate territory representatives for Illinois, one covering northern Illinois and one covering southern Illinois. (Ex. C, p. 29-32). Mr. Stieren claims his written discovery response denying the existence of any manufacturer's representative in Illinois was based upon the fact he, personally, had not engaged Hudalla & Associates. *Id.* Rather, they had been engaged through another company, BGHA, with whom WIC had a joint marketing venture. *Id*. In fact, Mr. Stieren was Vice President of and served as the corporate representative of BGHA during the joint marketing venture. *Id*. at 8-12. The owner of BGHA was also an employee of WIC during the joint marketing venture, receiving compensation from WIC for the marketing efforts. *Id*. at 11-12.

Hudalla & Associates was authorized to use WIC's Sniper Tree Stands trademark in the course of Hudalla's representation. *Id*. at 30. In fact, they use it to this day. *See* Hudalla Website, http://www.hudallaassociates.com/pages/SniperTreeStands, last visited December 7, 2014. Nonetheless, Mr. Stieren now claims the use is unauthorized, though he has never communicated to Hudalla & Associates they are no longer authorized. *Id*. at 31-32. Speaking to the significance of Hudalla's involvement in promoting the Sniper product line, each one of the "customers" WIC has identified as having Illinois retail locations is also identified as being on of Hudalla's "major accounts." *See* Hudalla Website, http://www.hudallaassociates.com/pages/MajorAccounts/, last visited December 7, 2014.

Refusing to unconditionally acknowledge Hudalla was its representative, WIC's second supplemental answers to jurisdictional interrogatories now admit WIC had Hudalla as its manufacturer's representative promoting WIC products in all 50 states but that, technically, WIC and Hudalla did not have any agreement because the representation was authorized by BGHA (despite the fact BGHA and WIC shared the employees granting the authorization). (Ex. F, No. 21). WIC's excuses in furtherance of its deception are unending.

Mr. Stieren advised in written discovery there have been no other claims, injury reports, or lawsuits in Illinois. *Id*. at No. 23. In sworn interrogatories he proclaimed, "W W Industrial Corp. has not received any reports, notices, or complaints for the time period 2010 to the present alleging any part of a treestand sold or distributed by W W Industrial Corp. bent or otherwise failed." *Id*. He further

11

contended this is the first lawsuit in which WIC has been sued. (Def's Ans. to Rogs, No. 7, attached as Exhibit M). WIC states, "W W Industrial Corp. has not received any reports, notices, or complaints for the time period 2010 to present alleging any part of a treestand sold or distributed by W W Industrial Corp. bent or otherwise failed." *Id.* Mr. Stieren testified in deposition accordingly:

> Q. No other lawsuits or administrative proceedings in Illinois since you took the helm in 2010?
> A. Correct.

(Ex. C, p. 33). This was completely untrue. WIC had been haled to this very Court this same year, raising no contention it was not subject to the Court's jurisdiction.

Mr. Stieren was impeached with the Complaint from the case of *James R. Angles v. WIC, Inc., d/b/a Sniper Tree Stands*, 3:13-cv-01018-JPG-SCW (S.D. IL). That matter involved a Sniper tree stand where it was alleged it had, like Plaintiff's tree stand, bent causing Mr. Angles to fall. (See generally Angles Complaint, attached as Exhibit N). Unbelievably, Mr. Angles and Plaintiff Queen are both from Centralia, Illinois, a town of fewer than 13,000 people. Mr. Angles' case was filed by attorney John Rosenstengel in St. Clair County, Illinois, on August 30, 2013. WIC was served at its corporate headquarters and subsequently removed the case to this very Court on October 1, 2013. (See Case History, attached as Exhibit O). Judge Stephen Williams was the magistrate judge assigned and conducted the Rule 16 conference. *Id*. The case just settled April 28, 2014, for which Mr. Stieren would have had to write the check to satisfy the $25,000 deductible under WIC's insurance policy. *Id.*; see also Ex. C, p. 91-93. Mr. Stieren claimed ignorance in deposition of whether he had written such a check. (Ex. C, p. 100-101).

When confronted with James Angles' Complaint, Mr. Stieren testified: "I remember – I'm familiar with James. I remember this, but I don't think it ever got filed. I don't think it was a lawsuit that got filed." *Id*. at 93. Contradicting that testimony, he went on to testify:

> Q. And when you told me earlier you hadn't received any complaints from the State of Illinois, obviously you have, correct?
> (objection)
> Q. Go ahead.
> A. Yeah. I don't – I don't remember this being in Illinois, but I remember the case, yeah.

(Ex. C, p. 94). Having finally acknowledged his recollection of the case, Mr. Stieren went on to testify as follows concerning case resolution:

> Q. You don't know whether you settled the case in April of this year?
> A. I remember we went back and forth discussing it, but I don't remember the final detail of what happened. I know that it's no longer going on, but I don't even remember it being a filed case. I thought this was just somebody – a complaint. So I don't have any information I can give you without looking back at it.

(Ex. C, p. 100-101). Mr. Stieren also recalled being represented by counsel in the case. *Id*. at 102.

Even if Mr. Stieren has selective memory, it does not explain how he could claim there have been no other reports of product complaints or injury <u>anywhere</u> in light of his acknowledgement he was aware of an injury reported, that he was familiar with James Angles, that there was a case against WIC (but he did not recall it was in Illinois), that WIC was represented by counsel in the case, there had been some "back and forth" discussion of case settlement, and the case is no longer pending. It does not end there.

13

WIC supplemented its answers to interrogatories following the deposition to identify Mr. Angles' lawsuit. The supplemental answers also yielded WIC, Inc., and Mr. Stieren, <u>individually</u>, were both named in yet another case in Missouri state court, which is currently pending, involving an API Outdoors tree stand failure, causing a hunter by the name of Andrew Beach to fall. (Def's 1st Supp. Ans. to Int., No. 7, attached as Exhibit P; see Beach First Amended Petition, attached as Exhibit Q). That matter was filed September 16, 2011, in the Circuit Court of Shannon County, Missouri. (Missouri Case Net docket entries, attached as Exhibit R). Mr. Stieren was <u>personally served</u> on June 17, 2013. (Ex. R). WIC and Mr. Stieren entered their appearance in that case August 30, 2013, and filed an answer. *Id*. They are represented pro hac vice by the same counsel as in the Angles case in this District. *Id*.; Ex. C, p. 102. Thus, at the same time Mr. Stieren denies under oath the existence of any other lawsuits against WIC he is being sued individually with WIC as a co-defendant. His brazen lies are truly reprehensible.

## **CONCLUSION**

Mr. Stieren has lied under oath repeatedly to undersigned counsel and this Court. It was clearly Mr. Stieren's hope his affidavit and initial sworn discovery responses would be taken at face value in order to avoid responsibility to Plaintiff by denying a resident of this District access to this Court in favor of a Minnesota corporation that is heavily dependent upon the State of Illinois for its revenues. Time and again Mr. Stieren was given the chance to come clean. Time and again he chose not to. Mr. Stieren and WIC's actions are unconscionable and WIC's pleadings should be stricken.

WHEREFORE, Plaintiff Jordan Queen respectfully requests this Court strike Defendant W W Industrial Corp.'s pleadings and award costs and attorney's fees.

Dated: <u>December 10, 2014</u>         **ONDER, SHELTON, O'LEARY & PETERSON, LLC**

By   _____
William W. Blair    #6285762
110 E. Lockwood
St. Louis, MO 63119
(314) 963-9000 telephone
(314) 963-1700 facsimile
blair@onderlaw.com

*Attorneys for Plaintiff Jordan Queen*

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was sent via the Court's electronic filing system on the 10th day of December, 2014, to the following counsel of record:

_/s/ William W. Blair_
William W. Blair

15