```
 1            IN THE DISTRICT OF THE UNITED STATES OF AMERICA
                  FOR THE SOUTHERN DISTRICT OF ILLINOIS
 2     _____
                                     )
 3     JORDAN QUEEN,                 )
                                     )
 4                    Plaintiff(s),  )
                                     )
 5        vs.                        )   Case 14-519-DRH-SCW
                                     )
 6     W. I. C., INC.  d/b/a SNIPER  )
       TREESTANDS,                   )
 7                                   )
                      Defendant(s).  )
 8     _____)

 9

10                        STATUS CONFERENCE
                             (TELEPHONIC)
11

12      BE IT REMEMBERED AND CERTIFIED that heretofore on  7/22/2016,
       the same being one of the regular judicial days in and for the
13        United States District Court for the Southern District of
          Illinois, Honorable Stephen C. Williams, United States
14     Magistrate Judge, presiding, the following proceedings were
         recorded by mechanical stenography; transcript produced by
15                               computer.

16

17                           APPEARANCES:

18     FOR PLAINTIFF:  William W. Blair of Onder, Shelton et al, 110
       East Lockwood, 2nd Floor, Webster Groves, MO 63119
19

20     FOR DEFENDANT:  Andrew D. Ryan and John Sandberg of Sandberg,
       Phoenix et al. - St. Louis, 600 Washington Avenue - 15th Floor,
21     St. Louis, MO 63101

22

23     REPORTED BY:  Molly N. Clayton, RPR, FCRR, Official Reporter
       for United States District Court, SDIL, 750 Missouri Ave., East
24     St. Louis, Illinois 62201, (618)482-9226,
                       molly_clayton@ilsd.uscourts.gov
25
```

```
 1                    INDEX OF WITNESS EXAMINATION
 2                                  DX       CX      R-DX     R-CX
 3  No witness testimony.
 4
 5
 6
 7                         INDEX OF EXHIBITS
 8  EXHIBIT           DESCRIPTION            Id'D      Rcv'd
 9  No exhibits identified or received.
10
11
12
13                       MISCELLANEOUS INDEX
14                                                 PAGE
15  No miscellaneous index entries.
16
17
18
19
20
21
22
23
24
25
```

1         *THE COURT:* Okay. Good morning. This is Judge
2 Williams.
3         We're here in *Queen versus W.I.C.*, Case
4 14-519-DRH-SCW. And we're here for a telephone conference
5 preliminary to what ultimately may be a hearing on plaintiff's
6 motion to strike as a sanction for a failure to disclose
7 another incident allegedly involving another broken ladder or,
8 rather, tree stand.
9         And we talked yesterday about the -- well, I'm going
10 to say "unrelated". But we had set a settlement conference.
11 And the Court in looking at some of the pleadings further
12 thought that this is an issue that we needed to start
13 addressing immediately, which is why I went ahead and set this
14 for a preliminary hearing today.
15         We've got Mr. Blair on for the plaintiff. Mr. Ryan on
16 for the defendant. And so good morning to both of you.
17         The -- what I want to try to do is figure out, based
18 on what's pled so far -- and I know the defense hasn't had an
19 opportunity to even make a written response -- but the
20 requested sanction necessarily would involve a consideration of
21 prejudice. Certainly there's been some articulated. And you,
22 you know, if you don't have time to do something that if you
23 had time to do it, it might have made a difference; that's
24 basically what you are saying. But it's difficult for the
25 Court to evaluate that without knowing exactly what we're

1  talking about.  And as of now I don't know that.  And so what
2  I'm -- the reason I set this is I want to find out what we're
3  doing to try to get to the bottom of that issue.
4  　　　　　The correspondence that was attached to the motion
5  suggests that defense counsel's engaged in some work as it
6  relates to this other potential claim.  I don't know why it's
7  only now beginning.  But that's what I see.
8  　　　　　So, Mr. Ryan, tell me what you can at this point about
9  what's going on with respect to this other claim.
10 　　　　　*MR. RYAN:*  Sure.  When the claim was reported -- back
11 in December is when that letter was dated.  When the claim was
12 reported I had been told that another lawyer in Chicago
13 contacted a lawyer from the plaintiff's office in January to
14 talk about the case.  I don't know the specifics of that phone
15 call other than, at that point in time, the lawyer in
16 Pennsylvania indicated that the stand was purchased from a
17 Walmart; which is significant because our people have never
18 distributed stands through Walmart.
19 　　　　　As I understand it, that was the last of any
20 conversation for several months regarding the incident until
21 recently when the parties discussed putting together an
22 inspection of the stand in Pennsylvania due to the statute of
23 limitations was running out.  I was not involved in
24 coordinating the investigation in Pennsylvania.  There is
25 another lawyer in Chicago that's involved with defending W.W.

1  Industrial in that matter, which is still a claim, it's not a
2  lawsuit.  So an inspection was coordinated in Pennsylvania and,
3  in fact, that inspection is taking place today, your Honor.
4  So, we should know more about the incident today.
5       But, in any event, because of the issue with Walmart,
6  there wasn't certainty whether the stand came from our people.
7  Eventually a manual was provided to our people that was a
8  manual that would have been published by W.W. Industrial.  At
9  that point, the person I've been working through, Nathan
10 Stieren, became confident the stand in Pennsylvania was his.
11      *THE COURT:*  Can I ask you a quick question.  Wouldn't
12 he have known that just by the identification of the product?
13 I mean, isn't the manual just confirm that it's the exact
14 product that the guy says it was in his letter?
15      *MR. RYAN:*  Ah, that's certainly possible, your Honor.
16 And the letter -- obviously the model number matches the stand
17 that's at issue in our case.  But as I'm sure you have become
18 aware in reading through some of the pleadings in this matter,
19 there's a lot of reverse engineering of stands.  There are
20 manufacturers in China that make stands for several different
21 companies.  So, your Honor, I can't speak to the possibility
22 that the stand could have been somebody else's, and I certainly
23 agree with your point that the model of the stand is
24 significant.  I can only share what has been told to me and
25 because of the stand being distributed through Walmart, that's

```
 1  why our guy thought it was unlikely that it was his.
 2          MR. BLAIR:  Judge, I --
 3          THE COURT:  Hang on a second, Mr. Blair.  And I'm
 4  going to solicit additional points.
 5          So, Mr. Blair, the discovery requests that you made
 6  that this -- that your contention is this letter would have
 7  been responsive to that request the moment it was received.
 8  What was the discovery request?
 9          MR. BLAIR:  Well, I think that Andy is working on
10  supplementing those requests right now, I don't have them in
11  front of me, but they were both interrogatories and requests
12  for production specifically directed to the issues of other
13  claims and lawsuits, as well as documentation as to other
14  claims and lawsuits.
15          THE COURT:  Yeah, I mean, the Court obviously --
16          MR. RYAN:  Your Honor, if I can chime in, because I've
17  been working on the supplementation, it is Interrogatory No. 7.
18          COURT REPORTER:  Was that Mr. Ryan?
19          THE COURT:  Yeah.
20          Is there any dispute that setting aside the issue of
21  whether or not the uncertainty about whether this product was,
22  in fact, a W.I.C. product, is there any dispute that this
23  information falls within the scope of those requests to produce
24  and the interrogatories?
25          MR. RYAN:  No, your Honor, and that's why we disclosed
```

1  it.
2          *THE COURT:* I figured that.
3          So it boils down to someone's determination that
4  because it's unclear whether this is ours, it doesn't need to
5  be supplemented or mentioned at this time. Right?
6          *MR. RYAN:* Right. That it was unclear. Wiley knows
7  this, and I've found this out too, in the last week to 10 days,
8  that also the batch number for the stand in Pennsylvania
9  matches the batch number for ours. So, you know, your Honor,
10 at this point unless this inspection today tells us something
11 completely different, I am almost certain that that stand is
12 going to be a W.W. Industrial stand.
13         *THE COURT:* Okay.
14         So, who made the call to wait to disclose until
15 further investigation revealed that there was at least some
16 likelihood in defendant's mind this was a W.W. or W.I.C. or
17 W.W. Industrial product?
18         Who decided that?
19         *MR. RYAN:* That was our decision, your Honor, because
20 of what we were instructed as far as the -- where the product
21 was distributed through.
22         *THE COURT:* Okay. So that's -- when you say "ours"
23 are you talking about the defendants?
24         *MR. RYAN:* The lawyers, yeah.
25         *THE COURT:* So, I mean, the -- and the reason I'm

1  asking this is, you know, there was a request to bring in
2  Mr. Stieren for an evidentiary hearing.  And then, you know, if
3  it's being acknowledged that it wasn't his decision, it was
4  "ours," I mean, obviously he is involved, but if the lawyers
5  are saying we don't have to disclose this, and it is the
6  lawyers' decision, it does have an impact on whether that's
7  necessary.  I'm not -- and, again, I'm not ruling on the
8  ultimate result.  It's just, where the responsibility lies.  If
9  it's the client's decision not to tell his lawyers until he's
10 got something in his mind that he thinks is sufficient to
11 confirm this, then, well, it's probably worth while to conduct
12 an examination as to what was going on.
13          *MR. RYAN:*  Your Honor, John Sandberg just walked in --
14          *MR. SANDBERG:*  Hi, Judge.
15          *MR. RYAN:*  -- and I'll just -- so he knows where we
16 are:  Judge Williams asked us whose decision it was not to
17 disclose this information when we learned about it, and I told
18 the Judge it was our decision when the client informed us that
19 he thought that the stand was not distributed through Walmart.
20          *MR. SANDBERG:*  Okay.
21          *THE COURT:*  All right.  And so obviously you all have
22 to make a formal response to that.  I'm wondering if it might
23 not be best that we use the August 18th for a hearing on that
24 matter.  But it may yet be a little premature without knowing a
25 little bit more factually about this other incident and, I

1   mean, I know a little more now.  I think, it sounds like we're
2   pretty darn sure it is the exact same stand as Mr. Blair is
3   suggesting.  And he is saying:  Not only that, the bend is in
4   the same or similar or substantially similar location, and it
5   looks like the mechanism of injury or, rather, fall is similar.
6   And has there been pictures that you have that have confirmed
7   this, Mr. Blair, or are you just relying right now on what your
8   understanding is?
9           *MR. BLAIR:*  I have pictures that were e-mailed to me
10  before we spoke the other day, and I got those from counsel for
11  the complaint in Pennsylvania by e-mail.  And I'm going to be
12  sending those over to Andy.  And I'm currently in L.A. and I
13  don't have access to them, but I'm going to get them over to
14  Andy.
15          *THE COURT:*  So this presents a difficult issue because
16  obviously, what are we? -- we are almost at the close of all
17  discovery in this case.
18          *MR. BLAIR:*  Yes.
19          *THE COURT:*  And it is what it is in that sense, and we
20  have to deal with it.  And I think we need to deal with this
21  issue, based on what I am hearing, before we have our
22  settlement conference, and I think it is imperative that we do
23  so.
24          I'm going to solicit your views.  The 18th might be
25  too soon to have a hearing on this matter or it might not be.

1   What's defendant's position?
2           *MR. RYAN:*  Your Honor, you are saying "the 18th", and
3   I may just be getting confused.  We have a settlement
4   conference for August 16th.  And I thought we were suggesting
5   doing a hearing perhaps in lieu of the settlement conference.
6           *THE COURT:*  I meant the 16th.  Thank you for
7   clarifying that.  I don't know why I had the 18th in my mind.
8           *MR. RYAN:*  I certainly don't mean to correct you on
9   that.
10          *THE COURT:*  You did, and you should have.  I'm glad
11  you did.
12          *MR. RYAN:*  Your Honor, I think, that that probably
13  makes sense.  I can tell you this:  I have something -- I have
14  a meeting scheduled in Chicago that week with a client that's
15  already been arranged.  While Mr. Sandberg is available on the
16  16th, I'm the one that was working with the client.  And to the
17  extent if the Court has questions about communication that went
18  on between the client and me, you may want me to be there.
19          *THE COURT:*  Yeah.
20          *COURT REPORTER:*  (Indicating).
21          *THE COURT:*  Yeah, that was Mr. Ryan.  Go ahead and
22  state your names before you speak.  It is hard for me to
23  remember to remind you all of that.  But, if you could.  But.
24          *MR. RYAN:*  I'm sorry, your Honor.
25          The other thing we can think about doing too is, we

```
 1   can lay out in our response when we were knew of -- or when we
 2   were alerted to the incident.  I can tell you the first time it
 3   was mentioned to me was in April, and it would have been after
 4   our experts' depositions were taken.  But, in any event, it was
 5   April that I became ware of it.  And, you know, through the
 6   course of the next couple of months that we were trying to
 7   confirm whether the stand was one of W.W. Industrial's.  So I
 8   throw that out to you, your Honor, and, you know, in the event
 9   that you want to proceed on August 16th, at least you will know
10   what the timing of things were, or what the timing of things
11   was.  So you can decide whether you want me there or not.
12              *THE COURT:*  Well, if it wasn't -- if counsel.  I want
13   to be careful because obviously there's attorney-client
14   communications that are going on.  And so, but, what this tells
15   me is that there was awareness as early as December, Counsel
16   was aware as early as April.  That's a significant gap in time
17   between December and April before anything is mentioned about
18   it that injects it into the issues in this case, which tells me
19   that we are going to need Mr. Stieren for the hearing.
20              And probably it would be best for you -- you know, how
21   y'all want to handle, you know, the attorney-client issues, I
22   can't dictate that to you.  There may be waiver issues if there
23   are things you want to affirmatively get into.  But the
24   privilege is still there right now, so it's a little bit
25   complicated.
```

```
 1            Then the other issue in terms of that not being
 2   necessarily a great day, is just the issue of how much more are
 3   we going to know about this actual failure, or the alleged
 4   defect, in the other tree stand that might relate to the issues
 5   here that could have been investigated by the plaintiff.
 6            Mr. Blair, I'll ask you --
 7            MR. RYAN:  Your Honor -- I'm sorry.
 8            THE COURT:  I'll come back to you, Mr. Ryan.
 9            Mr. Blair, I'll solicit some views from you at this
10   point.  Just trying to figure out the most orderly, but also
11   trying to expedite this a bit.
12            MR. BLAIR:  Judge, really, I'll defer to you.  I'm
13   pretty flexible in how we go about this.  The 16th would be
14   fine with me, but, again, I agree that Mr. Stieren needs to be
15   there if we are going to be talking a four month gap between
16   the original notice and counsel being notified.
17            THE COURT:  Yeah.  All right, well, then -- and,
18   Mr. Ryan, I'm not going to make you do this hearing without you
19   being there.  So we can do it a different day.  It's just that
20   simple.  So let's just take the settlement conference off for
21   now, and we will revisit that.
22            And if I don't have enough information because of
23   where things stand as of the day we have this hearing, might
24   just have to continue it to collect up a few more bits of
25   information.  But we won't delay it, you know, unnecessarily.
```

```
 1   We will just go ahead and see.  We will have it sometime in
 2   that time frame.  So let's start looking at dates.
 3           When do you think you will make a formal response to
 4   the pending motion, Mr. Ryan?
 5           MR. RYAN:  Your Honor, I expect to have something --
 6   our due date is next Friday.
 7           THE COURT:  Okay.
 8           MR. RYAN:  So I will have something by then.
 9           What I was going to also mention to your Honor is your
10   comments about how much more we will know by August about this
11   other incident.  Fortuitously or not, our expert in this case,
12   or one of our experts in this case, is going to be at that
13   inspection today.  So I anticipate knowing as much as we are
14   going to know in short order, and we expect to include
15   information that we learn today in our response brief.
16           THE COURT:  Okay.  Good.  That will help.
17           So you will have that, Mr. Blair, next Friday.  And
18   I'm going to say allow you, under these circumstances, I think,
19   you definitely are going to need to have an opportunity for a
20   reply.  So I'm going to go ahead and preauthorize that.  And
21   the normal response time for a reply is August 5th.  Is there
22   any reason you wouldn't be able to make that due to your other
23   commitments?
24           MR. BLAIR:  No.  I think, we will be fine.
25           THE COURT:  So then let's pick a date that counsel can
```

1  be here for this. And I'm going to direct that Mr. Stieren
2  testify. And it is in part due to the Court's prior
3  experiences in this case.
4           So let's --
5           MR. RYAN: Your Honor, I unfortunately am in a
6  conference room and I didn't bring my Blackberry -- I'm sorry,
7  my iPhone, to check my availability. Can you give me a few
8  minutes to go and grab it.
9           THE COURT: That's all right.
10          MR. RYAN: I apologize.
11          THE COURT: That's all right.
12                            *(Respite)*
13          MR. RYAN: I'm back, your Honor. I apologize.
14          THE COURT: Not a problem.
15          So there's the 17th. I think, that might not have
16 been a good day because I think I had proposed that for the
17 settlement conference and we rejected that for one reason or
18 the other.
19          MR. BLAIR: Yeah. That's the day I'm in Columbia for
20 all-day interview.
21          THE COURT: That's why.
22          MR. RYAN: That whole week was a problem for me, your
23 Honor, because of the client meeting that I had.
24          THE COURT: Okay. So let's --
25          MR. RYAN: It is actually a three-day meeting.

```
 1              THE COURT:  Okay.  Let's go with I've got availability
 2   on Monday the 22nd.  Because it's criminal duty month we would
 3   do it in the afternoon, 2:30 p.m.
 4              MR. RYAN:  That looks like it works, your Honor.  In
 5   the event Mr. Stieren is unavailable.  I don't know what his
 6   schedule is and I know he travels to China relatively
 7   frequently.
 8              THE COURT:  Well, then file -- if you find that out,
 9   just find it out within the first couple of days of next week
10   and.
11              MR. RYAN:  We will try to find it out today.
12              THE COURT:  And call Wiley and call us and we will get
13   on the line and find another date.  I mean, I'm not going to --
14   if the guy has got a previously arranged trip to China, I'm not
15   going to tell him that we can't -- that he's got to change
16   that.  But, I've got some other options.
17         But, otherwise, we will do it then at 2:30 on Monday
18   August 22.
19         Mr. Blair, that works for you?
20              MR. BLAIR:  It does.
21              THE COURT:  Okay.  All right.
22              MR. BLAIR:  Hey, Judge, quick question.  As far as
23   your practice for evidentiary hearings.  Can you kind of give
24   me a sense of how you conduct those, particularly as far as the
25   examination goes.
```

| | |
|---|---|
| 1 | *THE COURT:*  Well, you know, this is kind of a |
| 2 | different matter than what's typical.  It's your motion.  This |
| 3 | was Mr. Blair asking the question, right? |
| 4 | *MR. BLAIR:*  That's correct. |
| 5 | *THE COURT:*  Okay.  So if he shows up, you can call him |
| 6 | as a witness.  And, of course, they'll have an opportunity to |
| 7 | examine him, unless -- that seems to me you are asking that he |
| 8 | be there.  I am granting that request.  So I'm going to allow |
| 9 | you to examine him.  You will go first.  They'll obviously have |
| 10 | a chance at questions.  The Court very, well, may ask some |
| 11 | questions, as a finder of fact.  I frequently do when I'm the |
| 12 | finder of fact.  And if you have other evidence you wish to |
| 13 | present, you will go and then they will have an opportunity if |
| 14 | there's additional evidence they want to present and I'll hear |
| 15 | some argument.  And, like I said, it may be that we need |
| 16 | some -- there may be a missing piece at that point that we need |
| 17 | some additional information on, but maybe not. |
| 18 | Does that answer your question. |
| 19 | *MR. BLAIR:*  This is Wiley again.  Judge, I think, it |
| 20 | does.  The only other thing you had mentioned or referenced the |
| 21 | past experience with the prior motion for sanctions, and I just |
| 22 | wasn't sure what the scope of the examination you were thinking |
| 23 | would be confined in the issue in regards to this other claim |
| 24 | or other incident, or whether we were going to talk about the |
| 25 | whole gamut of things. |

1     *THE COURT:* I already had a hearing on that. And so,
2  I wasn't -- no we are not going to get into -- I already know
3  what happened there. And I don't think there's any necessity
4  to revisit that.
5     *MR. BLAIR:* Okay.
6     *THE COURT:* I'm interested in what's happened here.
7  But the fact of what happened before is relevant to this
8  question, possibly, to this extent: If the Court were to
9  conclude that there was some wrongdoing, intentional or
10 reckless, that could have an impact. And the previous issue
11 could have an impact on what the Court felt was an appropriate
12 remedy. So that's why I mention the prior hearing.
13    And so the record is clear, what I'm talking about is,
14 yes, your prior motion as it relates to representations made in
15 discovery concerning jurisdictional issues. But we have had
16 our hearing on that already.
17    Does that clarify that?
18    *MR. BLAIR:* It does, Judge, but I wanted to make sure
19 that I was properly prepared in scope.
20    *THE COURT:* Yeah. Any other questions? Thoughts?
21 Concerns? Issues you want to raise.
22    *UNIDENTIFIED SPEAKER:* The only thing that this just
23 raise as again, if we have a hearing --
24    *THE COURT:* This is Mr. Sandberg.
25    *MR. SANDBERG:* Yes, this is Mr. Sandberg. And sorry I

```
 1   didn't introduce myself again.
 2          Just if -- it's conceivable, I can see, because of the
 3   inspection going on today, that perhaps our experts could offer
 4   testimony also about the nature of this other incident which we
 5   only know a little about.
 6          So we would have the opportunity to offer evidence
 7   also if we thought it advisable?
 8          THE COURT:  Absolutely.
 9          And, of course, that might be a circumstance where,
10   you know, these things can snowball, which is why I want to get
11   on it now.  Because you have just raised the possibility of,
12   well, we might -- our expert might be able to say something.
13          Here's an example.  This has nothing to do with the
14   other case, there is absolutely no prejudice, no harm, no foul.
15   That's purely hypothetical at this point, but that's within the
16   realm.  Well, Mr. Blair might want to scrutinize that.  And,
17   naturally, I would have to give him an opportunity to do so
18   under these circumstances.  And that might mean that I'm not
19   able to make a decision at that point in time and we may need
20   to continue the hearing for that reason.  But, yes, I'm going
21   to give you an opportunity.
22          If your expert is planning on opining on something
23   that he has written a report on, well, he ought to be -- he
24   ought to get that report -- I'm talking about Mr. Blair.
25          MR. SANDBERG:  Your Honor, I'm not anticipating there
```

1  would be expert opinions.  I'm anticipating there might be
2  factual, you know, here's what I saw.
3          *THE COURT:*  Okay.  Well, yeah.  I mean, I'm going to
4  give you the opportunity.  But again, we may have to continue
5  the matter.
6          *MR. SANDBERG:*  Sure, all right.  Understood.
7          *THE COURT:*  Mr. Blair, anything else?
8          *MR. BLAIR:*  No, Judge.  Thank you.
9          *THE COURT:*  Okay.  I will see you all on the 22nd.  We
10 are adjourned.  And, just so it's clear, we are canceling the
11 settlement conference previously set for the 16th.
12         Okay.  We are adjourned.
13
14                              -oOo-
15                      REPORTER'S CERTIFICATE
16      I, Molly N. Clayton, RPR, FCRR, Official Court Reporter
   for the U.S. District Court, Southern District of Illinois, do
17 hereby certify that I reported with mechanical stenography the
   proceedings contained in pages 1 - 19; and that the same is a
18 full, true, correct and complete transcript from the record of
   proceedings in the above-entitled matter.
19
           DATED this 20th day of December, 2016.
20
21
                              *s/Molly Clayton, RPR, FCRR*
22                            _____
23
24
25