IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JORDAN QUEEN

Plaintiff,

vs.                                         Case No. 14-CV-519-DRH-SCW

W.I.C., INC. d/b/a
SNIPER TREESTANDS,

Defendant.

MEMORANDUM AND ORDER

HERNDON, District Judge:

## I.    INTRODUCTION AND BACKGROUND

Now before the Court is defendant's motion to exclude the testimony and report of plaintiff's expert Christopher W. Ramsey (Doc. 90). Defendant concurrently filed a motion to strike Ramsey's supplemental report and opinions on other grounds (Doc. 88). Also before the Court are plaintiff's motions to exclude the testimony of L.J. Smith (Doc. 109) and George Saunders (Doc. 110). For the following reasons, the motions are **DENIED**.

Plaintiff Jordan Queen brought the present lawsuit alleging that he was injured after his tree stand, a Scout Model STLS41 tree stand used for deer hunting, collapsed. (Doc. 2). The tree stand distributed by the defendant. Plaintiff alleges that on October 12, 2013, while he was at the top of the stand's ladder, the ladder bent, causing him to fall. As a result of the fall, plaintiff claims that he

suffered serious injuries. Because of said injuries, plaintiff alleges that he incurred medical expenses and lost wages, and that he will continue to lose wages, due to the debilitating condition of his right leg and ankle.

## II.    LEGAL STANDARD

"A district court's decision to exclude expert testimony is governed by FEDERAL RULES OF EVIDENCE 702 and 703, as construed by the Supreme Court in *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)." *Brown v. Burlington Northern Santa Fe Ry. Co.,* 765 F.3d 765, 771 (7th Cir. 2014); *see also Lewis v. Citgo Petroleum Corp.,* 561 F.3d 698, 705 (7th Cir. 2009). The *Daubert* standard applies to all expert testimony, whether based on scientific competence or other specialized or technical expertise. *Smith v. Ford Motor Co.,* 215 F.3d 713, 719 (7th Cir. 2000) (citing *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S.137, 141 (1999)). Federal Rule of Evidence 702, governing the admissibility of expert testimony, provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

"In short, the rule requires that the trial judge ensure that any and all expert testimony or evidence admitted "is not only relevant, but

reliable." *Manpower, Inc. v. Ins. Co. of Pa.* 732 F.3d 796, 806 (7th Cir. 2013) *(citing Daubert,* 509 U.S. at 589); *see also Bielskis v. Louisville Ladder, Inc.,* 663 F.3d 887, 894 (7th Cir. 2011) (explaining that ultimately, the expert's opinion "must be reasoned and founded on data [and] must also utilize the methods of the relevant discipline"); *Lees v. Carthage College,* 714 F.3d 516, 521 (7th Cir. 2013) (explaining the current version of Rule 702 essentially codified *Daubert* and "remains the gold standard for evaluating the reliability of expert testimony").

Courts in the Seventh Circuit conduct a three-step analysis under *Daubert. Ervin v. Johnson & Johnson, Inc.,* 492 F.3d 901, 904 (7th Cir. 2007).[1] First, the district court must determine whether the person whose testimony is offered is in fact an expert, as codified in Rule 702 through "knowledge, skill, experience, training, or education." *Id.* (citing Fed.R.Evid. 702). Notably, although "extensive academic and practical expertise" sufficiently qualify a potential witness as an expert, *Bryant v. City of Chicago,* 200 F.3d 1092, 1098 (7th Cir. 2000), "Rule 702 specifically contemplates the admission of testimony by experts whose knowledge is based on experience," *Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 591 (7th Cir. 2000). *Smith*, 215 F.3d at 718 (citing *Kumho*, 526 U.S. at 156 ("[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience.")).

---

[1] The Court notes the Seventh Circuit has also described the *Daubert* analysis as a two-step process. *See Chapman v. Maytag Corp., 297 F.3d 682, 686 (7th Cir. 2002).* However, as *Chapman* simply combines the first two steps described in *Ervin* as a single test of reliability, whether the analysis is described as a three-step or two-step process does not substantively change the Court's analysis.

Secondly, the district court must determine the expert's reasoning or methodology is reliable. *Ervin,* 492 F.3d at 904; *see Mihailovich v. Laatsch*, 359 F.3d 892, 918 (7th Cir. 2004) (citing *Kumho*, 526 U.S. at 147). Specifically, the testimony must have a reliable basis in the knowledge and experience of the relevant discipline, *Kumho*, 526 U.S. at 149 (internal quotations removed), consisting in more than subjective belief or unsupported speculation. *Chapman v. Maytag Corp.*, 297 F.3d 682, 687 (7th Cir. 2002); *Daubert*, 509 U.S. at 590.

Further, as to reliability, *Daubert* provided the following non-exhaustive list of relevant factors: "(1) whether the scientific theory can be or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether the theory has been generally accepted in the scientific community." *Ervin*, 492 F.3d 901, 904 (7th Cir. 2007) (citing *Daubert*, 509 U.S. at 593-94).

Nonetheless, there is no requirement that courts rely on each factor, as the gatekeeping inquiry is flexible and must be "tied to the facts" of the particular case. *Kumho*, 526 U.S. at 150 (quoting *Daubert*, 509 U.S. at 591); *see also Chapman*, 297 F.3d at 687. Thus, "the role of the court is to determine whether the expert is qualified in the relevant field and to examine the methodology the expert has used in reaching his [or her] conclusions." *Smith*, 215 F.3d at 718 (citing *Kumho,* 526 U.S. at 153).

The district court possesses "great latitude in determining not only *how* to measure the reliability of the proposed expert testimony but also whether the testimony is, in fact, reliable." *United States v. Pansier*, 576 F.3d 726, 737 (7th

Cir. 2009) (citing *Jenkins v. Bartlett*, 487 F.3d 482, 489 (7th Cir. 2007)). Accordingly, the court's gatekeeping function requires focus on the expert's methodology; "[s]oundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact." *Smith*, 215 F.3d at 718 (citing *Daubert*, 509 U.S. at 595; *Walker,* 208 F.3d at 587).

Resolution of an expert's credibility or the correctness of his or her theories is left to the jury's determination after opposing counsel has cross-examined the expert at issue. *Id.* (citing *Walker*, 208 F.3d at 589-90). Thus, "[i]t is not the trial court's role to decide whether an expert's opinion is correct. The trial court is limited to determining whether expert testimony is pertinent to an issue in the case and whether the methodology underlying that testimony is sound." *Id.* (citing *Kumho*, 526 U.S. at 159 (Scalia, J., concurring) (stating that the trial court's function under *Daubert* is to exercise its discretion "to choose among reasonable means of excluding expertise that is *fausse* and science that is junky")). However, as an expert must explain the methodologies and principles that support his or her opinion, he or she cannot simply assert a "bottom line" or *ipse dixit* conclusion. *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010) (quoting *Minix v. Canarecci*, 597 F.3d 824, 835 (7th Cir. 2010)).

Lastly, the district court must consider whether the proposed testimony will assist the trier of fact in its analysis of any issue relevant to the dispute. *See Smith*, 215 F.3d at 718; *Chapman*, 297 F.3d at 687; *Daubert*, 509 U.S. at 592*.* It

is crucial that the expert "testify to something more than what is 'obvious to the layperson' in order to be of any particular assistance to the jury.'" *Dhillon v. Crown Controls Corp.,* 269 F.3d 865, 871 (7th Cir. 2001) (quoting *Ancho v. Pentek Corp.,* 157 F.3d 512, 519 (7th Cir. 1998)).  However, the expert need not have an opinion as to the ultimate issue requiring resolution to satisfy this condition.  *Smith,* 215 F.3d at 718 (citing *Walker,* 208 F.3d at 587).  Based on the legal standard set forth above, the Court now turns to the individual experts' testimony challenged in this case.

### III.   ANALYSIS

**a. Dr. Christopher W. Ramsey**

**i. Motion to Exclude**

Defendant argues that the report and testimony of plaintiff's expert, Dr. Christopher W. Ramsey, must be excluded. Once a party calls into question the qualification under *Daubert*, it is the party supporting that expert who carries the burden of persuasion to convince the court that said expert is qualified. Fed.R.Evid. 702 advisory committee's note 2000 Amend.) ("[T]he admissibility of all expert testimony is governed by the principles of Rule 104(a). Under that Rule, the proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence."); See also *Lewis v. CITGO Petroleum Corp.,* 561 F.3d 698, 705 (7th Cir. 2009); *Bourjaily v. United States,* 483 U.S. 171, 175–76 (1987).

The first issue to address is whether Dr. Ramsey is qualified to testify as an expert in this case. To determine if an expert is qualified to testify in a particular matter, a court should "consider a proposed expert's full range of practical experience as well as academic or technical training." *Smith*, 215 F.3d at 718. The Court must compare the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." *Gayton v. McCoy*, 593 F.3d 610, 615 (7th Cir.2010) (citing *Carroll v. Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir.1990)).

Here, defendant does not dispute Ramsey's qualifications as a metallurgist, but rather argues that Ramsay "has never erected a ladder stand and has never seen anyone erect a ladder stand outside of litigation. He has no training or experience designing or manufacturing hunting products, has never designed or manufactured a ladder stand, has never authored any warnings or instructions for ladders or hunting-type products, and does not know what factors are considered when selecting steel used to manufacture ladder stands for hunting." (Doc. 91, pg. 5).

Dr. Ramsay is the Director of the Student Design Center at Missouri University of Science and Technology (Doc. 107-19). He holds a Ph.D. in Metallurgical Engineering from the Colorado School of Mines, where he wrote his dissertation on welding metallurgy. Ramsey also serves as the Principal Forensic Scientist of Ramsey Scientific, Inc., a company that conducts forensic investigations, failure analysis, material selections, and corrosion testing relating

to metallurgy and metal sciences. He is a member of the American Foundry Society, the American Institute of Mining, Metallurgical, and Petroleum Engineers, and the Iron and Steel Society, among other affiliations (*Id.*). Dr. Ramsey has received numerous awards for his work, and has published multiple peer-reviewed articles on metallurgy and related topics. Dr. Ramsey has also been a qualified expert in 24 cases since 2012, serving both the plaintiffs and defendants.

Despite defendant's argument surrounding his experience with designing or manufacturing hunting stands specifically, Ramsey's experience with metallurgy and material sciences is clearly evident. Given that the tree stand's metal composition and yield strength are relevant to the issues in this case, the Court finds that Dr. Ramsey is qualified to testify as an expert in this matter.

The next issue is to determine whether the reasoning and methodology that Dr. Ramsey used to make his determination were reliable. Defendant argues that Ramsey's investigation and testing were inadequate, and the absence of evidentiary and factual support for Ramsey's opinions requires exclusion of his testimony. In response, plaintiff argues that Ramsey not only investigated the subject tree stand and reviewed the pleadings and depositions in this case, but he also applied sound principles of metallurgical engineering in forming his opinions.

"Unlike an ordinary witness, [ ], an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation. See Fed.R.Evid. 702 and 703. Presumably, this relaxation of the

usual requirement of firsthand knowledge [ ] is premised on an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline." *Daubert*, 509 U.S. at 592. Here, Dr. Ramsey tested an exemplar STLS41 tree stand's compositional analysis, hardness, and conducted a microstructural evaluation prior to forming his opinions. Dr. Ramsey also notes that he investigated the tree stand used by the plaintiff through "visual examination, photodocumentation, and dimensional analysis (Doc. 107-15). All testing is widely accepted in the field of metallurgy.

Ultimately, Ramsey utilized reliable methods common of the metallurgy field. This includes inspection of the stand used by plaintiff, conducting physical testing on an exemplar stand, review of deposition testimony, laboratory testing, and his knowledge and experience. *Daubert* instructed courts to not be concerned with reliability of the conclusions generated by valid methods and reasoning, but instead determine the validity of the principles and methodology underlying conclusions and inferences. *Winters v. Fru–Con, Inc.*, 498 F.3d 734, 742 (7th Cir.2007).

In short, defendants' objections may affect the credibility of Ramsey's opinions, but do not bar his testimony from the jury's consideration. Ultimately, Ramsey utilized methods commonly relied on by others in his field. The Court concludes defendants' criticisms of Ramsey's testing, inferences and conclusions are proper subjects for defendants' own expert testimony and for cross-examination before jury.

Finally, regarding whether Ramsey's testimony will assist the trier of fact in making their determination, his testimony and report offer an opinion relevant to the disputed facts that go to deciding the ultimate issue in this case. Ramsey reviewed testimony, exemplar stands, photos of the accident scene, and data collected while performing his compositional analysis, microstructural analysis and further testing in the course of forming his opinion. Clearly, Ramsey does opine to "something more than what is 'obvious to the layperson." *Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 871 (7th Cir. 2001). Therefore, his testimony is clearly relevant, and would aid the trier of fact in this case to determine the facts in issue. Accordingly, defendants' motion to exclude Dr. Ramsey's testimony is denied.

### ii. Motion to Strike Supplemental Report

THE FEDERAL RULES OF CIVIL PROCEDURE require a testifying expert to prepare and sign a written report containing, inter alia, "a complete statement of all opinions the witness will express and the basis and reason for them…at the times and in the sequence that the court orders." FED. R. CIV. P. 26(a)(2)(B) & (a)(2)(D). Rule 26(e)(1) imposes a "duty" on a party to supplement an expert's report "if a party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."

Essentially, the defendant contends that Dr. Ramsey's supplemental report, and his opinions flowing from that report, should be stricken under Rule 26 because the report is "well beyond the limited activity the [Judge Williams] approved at the March 22, 2016, Discovery Dispute Conference (Doc. 88). In response, plaintiff argues that Dr. Ramsey did less rebuttal testing than was authorized by Judge Williams. Plaintiff argues that the purpose of Dr. Ramsay's additional testing "was to supplement his original opinions to address testing documentation Defendant relies on in its defense, but had failed to disclose during the course of Plaintiff's expert discovery. Further, Dr. Ramsay's testing was to rebut the validity of WIC's engineering expert George Saunders' test results wherein he used stands that did not contain the manufacturing defect at issue." (Doc. 106).

Upon review of the record and Judge Williams' ruling, the Court finds that Ramsey's supplemental report is acceptable. Given defendant's late disclosure of the "4X Testing" of the STLS41 tree stand, Dr. Ramsey was clearly not afforded an opportunity to consider that documentation in his original report and testing. Judge Williams previously founds that defendant failed to disclose this critical discovery in a timely manner. Doing so resulted in a need to allow plaintiff's expert, Dr. Ramsey, to do additional testing. Defendant's now must live with the consequences of their late disclosure. Accordingly, the motion to strike Ramsey's supplemental report is denied.

### b. L.J. Smith

Plaintiff argues that the report and testimony of defendant's expert, L.J. Smith, a hunting accident reconstructionist, must be excluded. Plaintiff does not challenge Smith's qualifications as an expert, but rather questions the reliability and relevancy of his opinions surrounding the "negative angle" of the tree stand and use of criss-cross straps to secure the stand.  Specifically, plaintiff argues that Smith's opinion that the tree stand did not bend inwards lack foundation. Plaintiff also argues that Smith did not inspect the stand until it had been retrieved from the accident site which is unreliable, and in fact, all evidence leads to the opposite of Smith's conclusion.

As to argument that Smith's opinions lack foundation, defendant responds arguing that Smith's opinion was based on his review of the pleadings in this case and his personal inspection of the subject ladder, stand and accident site on February 10, 2015. In his report, Smith noted that, on the tree in question:

> "[T]he bark biters made contact with the tree. The distance from the bark biters to the front legs of the ladder is 31 inches. There is a 4 inch lean to this tree from where the stand would have contacted the tree to the ground. Mr. Queen had his stabilizer bar set at 33 inches. If you add the four inch lean to the 31 inches from the back of the bark biters to the front legs you get 35 inches.  His bar was set at 33 inches so he was at a 2 inch negative incline before he ever left the ground."

(Doc. 113, pg. 33).

As mentioned above, Rule 702 specifically allows for the admission of expert testimony where the expertise and knowledge is based on that person's experience. *Walker*, 208 F.3d at 591.  Additionally, "no one denies that an expert

might draw a conclusion from a set of observations based on extensive and specialized experience," which is the case here. *Smith*, 215 F.3d at 718 (citing *Kumho*, 526 U.S. at 156). Smith has had a lengthy career investigating hunting accidents and has personal experience "as a hunter for over 50 years and a tree stand hunter for over 35 years" (Doc. 113, pg. 4). His opinions and deposition testimony are based on facts learned during discovery through inspection of the stand and tree at issue, review of photos of the subject tree strand, deposition testimony, and the pleadings in this case, in addition to scientific knowledge acquired over his lengthy career investigating hunting accidents (Doc. 113).

Thus, as to Smith's methodology and reasoning surrounding his conclusions about the angle of the tree stand, the Court must find that his opinion is based on more than subjective belief and unsupported speculation. *Chapman*, 297 F.3d 682, 687 (7th Cir. 2002); *Daubert*, 509 U.S. at 590. "If the proposed expert testimony meets the *Daubert* threshold of relevance and reliability, the accuracy of the actual evidence is to be tested before the jury with the familiar tools of "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof."" *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012) (citing *Daubert*, 509 U.S. at 596.). As to the relevancy of the criss-cross straps, defendant rebuts the plaintiff's arguments by noting that the straps are relevant in instances when the stand was not set up properly. Given Smith's opinion that plaintiff erected the stand at an improper angle, his criss-cross strap testimony meets the relevancy threshold.

Plaintiff next argues that Smith's opinions regarding the number of people erecting the stand, the choice of tree, the use of one person to support the stand, and plaintiff's failure to use a full-body safety harness are irrelevant and will not assist the trier of fact. Specifically, plaintiff challenges Smith's opinions stating:

1. "He did not use at least three adults to help install the ladder stand;

   …

2. He chose a severe leaning shag bark hickory tree, with loose bark, onto which he attached the ladder stand. This tree leaned over 4 inches on one side and 7 inches on the other.

   …

3. He did not have a full body safety harness with him as he climbed the ladder.;

4. He climbed the ladder of the stand with only one person supporting the ladder."

(Doc. 109, pg. 3-4).

Defendant responded first by noting that "defendant does not intend to offer any evidence or opinion that Queen's failure to use a full-body safety harness contributed to cause his accident unless Queen opens the door to such evidence" (Doc. 118, pg. 5). Defendant goes on to argue that Smith should be allowed to offer his opinions because they show that the accident was preventable, had plaintiff followed the instructions that accompanied the stand. Specifically, defendant refutes plaintiff's claim that this information is irrelevant because it supports Smith's conclusions that "Queen's failure to follow warnings and

instructions, which were provided to him in several ways, is the reason for his accident and injuries." (Doc. 113, pg. 32).

The relevance inquiry may bear on the ultimate issue in a case or simply an issue in the case. *Smith*, 215 F.3d at 721. Mr. Smith offers an opinion on the issue in this case, which was formed after analyzing and examining the tree stand, collecting discovery, and review of stand's warning labels and instructions and safety video associated with the Scout Model STLS41 tree stand.  Specifically, with regard to the tree stand installation, Smith does opine to ""something more than what is 'obvious to the layperson.'" *Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 871 (7th Cir. 2001). Therefore, his opinions are relevant and his testimony would aid the trier of fact in this case.

Accordingly, the Court finds that Smith's testimony is admissible, relevant, not prejudicial and will assist the jury in making its decision in this case. While the methodology and evidence Smith reviewed in forming his opinions are certainly subject to scrutiny, the record does not indicate that his methodology is unreliable. To the extent that plaintiff disagrees with Smith's conclusions, the appropriate method of challenging such testimony is through cross-examination rather than exclusion. Thus, the Court finds that Smith's opinions are admissible and that his opinions will assist the jury. The motion to exclude is denied.

### c.  George Saunders

Plaintiff next argues that the report and testimony of defendant's expert, Hunter Mechanical Engineer George M.  Saunders, Jr., P.E., C.F.E.I., must be excluded. Plaintiff does not challenge Smith's qualifications as an expert, but rather questions the reliability of his opinions because they are based on (1) his testing of exemplar tree stands that differ from the Scout Model STLS41 tree stand at issue; (2) his opinions were founded on a configuration such that the ladder leans away from the tree; (3) his calculations indicating that the tree stand could not have bent inward are incorrect; and (4) his opinion that the Q195 carbon steel tubing used in plaintiff's tree stand complied with industry standards was pure *ipse dixit*.

The Court must determine that the expert's reasoning and methodology are reliable in order to satisfy *Daubert*.  *Ervin*, 492 F.3d at 904; *see Mihailovich v. Laatsch*, 359 F.3d 892, 918 (7th Cir. 2004) (citing *Kumho*, 526 U.S. at 147). With regard to Saunders' methodology and reasoning, the Court finds that it is based on more than subjective belief and unsupported speculation. Saunders' report notes that he "conducted four point bend tests on pinned male/female joints similar to those in the subject ladder stand to quantify mechanical behavior of the joint" before reaching his opinion (Doc. 110-1, pg. 24). The Euler Column Formula, which was used by Saunders to test column buckling, is widely accepted in the field of engineering. Also, Saunders explained the testing conditions created to aid in forming his opinions. Saunders' report and deposition testimony also

clearly indicate that his opinion is based on more than subjective belief and unsupported speculation:

> "[Saunders' office] conducted a full scale test on an exemplar STLS41 tree stand which was installed consistent with the written instructions with regard to geometry (i.e. the seat/foot platforms were level and the stabilizer bar was installed on the ladder section and secured to the tree). The stabilizing ropes were intentionally not installed during the test sequence. For this test the stabilizer bar was installed on the third rung up on the middle ladder section (i.e. same position observed on the evidence). A vertical load was applied to the second rung up on the top ladder section. The test condition was consistent with Mr. Queen's testimony in that the seat/foot platforms were level, the stabilizer bar was level and secured to the tree, and the point of load application would have been consistent with Mr. Queen's foot position as he reached the top of the ladder.
>
> …
>
> The tree used during the exemplar testing leaned toward the tree stand 3.5°, consistent with the accident tree. The adjusted length (yoke to yoke) of the stabilizer bar when tested with the intended geometry was approximately 44 inches."

(Doc. 110-1, pg. 24).

For an expert's testimony to qualify as relevant under Rule 702 "it must assist the jury in determining any fact at issue in the case." *Smith*, 215 F.3d at 719–20. Further, under Rule 704(a) an expert may testify to the ultimate issue in a case." *Id.* (citing W*alker v. Soo Line R. Co.*, 208 F.3d 581, 587 (7th Cir.2000)). "The question of whether the expert is credible or whether his … theories are correct given the circumstances of a particular case is a factual one that is left for the jury to determine after opposing counsel has been provided the opportunity to cross-examine the expert regarding his conclusions and the facts on which they are based." *Walker*, 208 F.3d at 589–90. It is not the trial court's role to decide whether an expert's opinion is correct.

In this case, Saunders offers an opinion on the main issue in this case. The arguments made by plaintiff regarding Saunders' testing of exemplars and his sentiments surrounding the accident go directly to the credibility of his opinion. Saunders reviewed all the pleadings, deposition testimony, Dr. Ramsey's expert report, and the Sniper Model STLS41 tree stand from plaintiff's accident before reaching his opinion regarding the defectiveness of the stand. He based his testing on the information retrieved from the relevant case documents and his own testing and calculations. Clearly, Saunders, as a mechanical engineer, opines to "something more than what is 'obvious to the layperson.'" *Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 871 (7th Cir. 2001). Therefore, his opinions are relevant and his testimony would aid the trier of fact in this case.

While, plaintiff may disagree with opinions stated by Mr. Saunders, his opinions are based on the underlying facts to which Saunders has applied an accepted methodology, given the particular events, and his opinions are not based on speculation. These matters go to the weight and/or credibility the Court should give Mr. Saunders' opinions, not to their admissibility. However, the plaintiff is free to cross examine Mr. Saunders on why he feels the opinions are incorrect. Accordingly, the Court finds that Saunders' opinions are admissible and that his opinions will assist the jury. The motion to exclude is denied.

IV.   **CONCLUSION**

Accordingly, the Court **DENIES** the plaintiff's and defendant's motions to exclude testimony (Docs. 90, 109, & 110) and defendant's motion to strike (Doc. 88).

**IT IS SO ORDERED.**

Signed this 31st day of March, 2017.

Digitally signed by
Judge David R. Herndon
Date: 2017.03.31
08:58:03 -05'00'

**United States District Judge**