# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

JORDAN QUEEN

        **Plaintiff,**

vs.                           Case No. 14-CV-519-DRH-SCW

W.I.C., INC. d/b/a
SNIPER TREESTANDS,

        **Defendant.**

## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

Pending before the Court are nine motions *in limine* filed by defendant WW Industrial Corp., (Docs. 167-175) and seven motions *in limine* filed by plaintiff Jordan Queen and (Docs. 176-180; 198; 204).

Defendant and plaintiff both seek preclusion of specific evidence and barring of specific testimony pursuant to FEDERAL RULES OF EVIDENCE 401, 402, and 403. Rule 401 holds evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence." Fed.R.Evid. 401. Further, relevant evidence is admissible unless a binding rule holds otherwise, while irrelevant evidence is inadmissible. See Fed.R.Evid. 402. Lastly, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed.R.Evid. 403.

**The Court now turns to the pending motions, and hereby finds as follows:**

1. **Defendant's First Motion *in Limine* to Exclude Evidence or Testimony Regarding Future Surgery (Doc. 167)**

    Defendant first requests that plaintiff be prohibited from offering any evidence, testimony, opinions, or argument regarding future surgery. Defendant argues that plaintiff's attorneys are expected to argue that plaintiff needs a future ankle fusion surgery based on life care planner Santo Steven BiFulco's testimony that surgery is "probable". Defendant goes on to argue that Dr. Gardner, an orthopedic surgeon and plaintiff's treating physician, was unable to state "whether Mr. Queen is in that 5 percent" of patients who require a future ankle fusion surgery or not. Based on Dr. Gardner's testimony and that of Dr. Miller—the doctor who took over plaintiff's care after Dr. Gardner moved to California—defendant argues that "a 5% chance for surgery… is nowhere near the reasonable certainty necessary to render evidence or testimony regarding that surgery admissible." (Doc. 167).

    In response, plaintiff argues that Dr. Gardner's actual testimony reflects that fusion surgery is presently medically directed at plaintiff's election, taking into consideration a risk-benefit assessment of the surgery (Doc. 181). Plaintiff also argues that Dr. Gardner did not indicate that there is only a 5% chance that plaintiff will need the future ankle fusion surgery. Plaintiff instead argues that Dr. Gardner did not offer his opinion specific to Mr. Queen, but instead it pertained to the percentage of the overall population of individuals with post-traumatic

arthritis who ultimately have an ankle fusion. Upon review, the Court **GRANTS in part and DENIES in part** the motion. Defendant's motion is granted as to BiFulco's testimony, because he is not qualified to testify to plaintiff's need for future surgery, but denied as to Dr. Gardner and Dr. Miller's testimony, which is clearly relevant to the issue at hand. Resolution of the doctors' credibility or the correctness of his or her theories is left to the jury's determination after opposing counsel has cross-examined the expert at issue. *Smith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir. 2000).

**2. Defendant's Second Motion *in Limine* to Prohibit Plaintiff from Offering Evidence or Testimony Regarding Unpaid Medical Bills (Doc. 168)**

Defendant next requests that plaintiff be prohibited from offering evidence or testimony regarding unpaid medical bills (Doc. 168). Defendant argues that in Illinois, medical bills are admissible only if a plaintiff can prove the charges were necessarily incurred due to the defendant's negligence, and that the charges were reasonable. *Arthur v. Catour*, 833 N.E.2d 847, 853 (Ill. 2005). For unpaid medical bills, a plaintiff establishes necessity and reasonableness "by introducing the testimony of a person having knowledge of the services rendered and the usual and customary charges for such services." *Klesowitch v. Smith*, 52 N.E.3d 365, 376 (Ill.App. 1st Dist. 2016) (quoting *Arthur*, 833 N.E.2d at 853).

Here, plaintiff intended to rely on life care planner Santo Steven BiFulco to testify that plaintiff's "past medical treatment in relation to the accident has been reasonable and necessary and the associated medical charges are usual and

customary" (Doc. 168). However, based on the Court's September 5, 2017, Order excluding the report and testimony of Dr. Santo Steven BiFulco (Doc. 200), the Court **GRANTS** the motion as to BiFulco. However, if plaintiff has another expert who testified in a qualified way about the bills, evidence regarding the medical bills is permissible.[1] If, in the alternative, plaintiff does not have a witness who can testify about the bills, and said bills are in fact unpaid, the unpaid bills are excluded.

3. **Defendant's Third Motion *in Limine* to Prohibit Santo Steven Bifulco From Providing an Independent Diagnosis of or Prognosis for Plaintiff that is not Contained in Plaintiff's Medical Records (Doc. 169)**

Defendant's third motion seeks to prohibit plaintiff's life care planner Santo Steven BiFulco from providing any independent diagnoses or prognoses for plaintiff that are not contained in plaintiff's medical records (Doc. 169). In light of the Court's September 5, 2017, Order excluding the report and testimony of Dr. Santo Steven BiFulco (Doc. 200), the Court **DENIES as moot** Defendants' motion *in limine*.

4. **Defendant's Fourth Motion *in Limine* to Allow Plaintiff's Treating Physician Anna N. Miller, M.D.'s Videotaped Testimony to be Played at Trial (Doc. 170)**

Defendant's fourth motion seeks an Order allowing plaintiff's treating physician Dr. Anna N. Miller to testify via videotaped deposition at trial. Specifically, defendant argues that Dr. Miller's professional responsibilities constitute 'exceptional circumstances', and there is no reason to prohibit her from

---

[1] The Court addresses plaintiff's permissive motion *in limine* regarding proposed witnesses testimony addressing usual and customary charges for medical bills below.

testifying via videotaped deposition, in light of the disruption to her busy schedule seeing patients or performing surgery. Defendant also notes that plaintiff's attorney was able to cross-examine Dr. Miller at her deposition and asked nothing that would indicate plaintiff is challenging Dr. Miller's credibility. In the alternative, defendant notes that even if Dr. Miller's credibility were being challenged, her deposition was videotaped, thereby enabling jurors to observe her mannerisms and voice to determine her credibility.

Plaintiff opposes the motion contending that the doctor's busy schedule does not constitute exceptional circumstances and that hardship has not been established for this witness (Doc. 189). As noted by the defendant, "Courts are sharply split on the circumstances under which a physician's professional responsibilities may constitute 'exceptional circumstances,' justifying the admissibility of his or her deposition even when the witness is within the subpoena power of the court." *McDaniel v. BSN Med., Inc.*, 2010 WL 2464970, at *3 (W.D. Ky. June 15, 2010)(McKinley, Jr., J). However, under the facts of this case, the Court finds that there is sufficient evidence to constitute exceptional circumstances, specifically looking to Dr. Miller's schedule and the inconvenience to both her and her patients who would have their medical care disrupted by cancelled appointments. Thus, the Court **GRANTS** Defendants' motion *in limine*, such that Dr. Miller's video deposition testimony may be used at trial.

5. **Defendant's Fifth Motion** *in Limine* **to Exclude Evidence, Testimony, Opinions, or Argument that Plaintiff's Future Medical Expenses Exceed the Affordable Care Act's Maximum Annual Out-of-Pocket Expenditure Limit (Doc. 171)**

Defendant's fifth motion *in limine* seeks to prohibit plaintiff from offering any evidence, testimony, opinions, or argument that plaintiff's future medical expenses exceed the Affordable Care Act's ("ACA") maximum annual out-of-pocket expenditure limit (Doc. 171). Specifically, defendant's motion addresses the projected medical expenses included in BiFulco's life care plan. In light of the Court's September 5, 2017 Order excluding the report, conclusions and testimony of Dr. Santo Steven BiFulco (Doc. 200), the Court **DENIES as moot** defendants' motion *in limine*.

6. **Defendant's Sixth Motion *in Limine* to Exclude Evidence, Testimony, Opinions, or Argument Suggesting Plaintiff's Refusal to Obtain Medical Treatment is Because of an Inability to Pay (Doc. 172)**

Defendant's sixth motion *in limine* seeks to prohibit plaintiff from offering any evidence, testimony, opinions, or argument suggesting plaintiff's failure to obtain medical treatment between October 23, 2014, and December 19, 2016, was due to an inability to pay. Defendant is concerned that plaintiff might suggest the reason for not receiving treatment between the aforementioned dates was due to his inability to afford treatment. In response, plaintiff argues that "defendant wishes to argue that plaintiff has not received all the treatment that has been recommended for him because it was not needed." However, "[d]efendant recognizes in doing so it is opening the door to evidence of a plaintiff's inability to pay under Seventh Circuit precedent." *Van Bumble v. Wal-Mart Stores, Inc.*, 407 F.3d 823, 826-27 (7th Cir. 2005) (Doc. 187).

The Seventh Circuit Court is clear that evidence regarding a plaintiff's financial situation or inability to pay for medical treatment is prejudicial to a jury's damages calculation, and therefore inadmissible. V*an Bumble v. Wal-Mart Stores, Inc.*, 407 F.3d 823, 826-27 (7th Cir. 2005). *Van Bumble* involves a slip-and-fall case, where the court found that the plaintiff's financial condition was irrelevant and inadmissible as it would prejudice a jury's damages finding.

Defendant argues that *Van Bumble* is no longer good law following implementation of the Affordable Care Act. More specifically, defendant argues that it "cannot open the door to evidence suggesting Queen might not be able to afford BiFulco's life care plan items in light of the fact Queen is required to carry insurance that will pay for those items." (Doc. 172). However, the Court notes that the Seventh Circuit and the United States Supreme Court are the only judicial bodies that can make such a declaration regarding the validity of the *Van Bumble* opinion in light of the Affordable Care Act's implementation. Therefore, the Court **DENIES** defendants' motion *in limine.*

### 7. Defendant's Seventh Motion *in Limine* to Bar Plaintiff's Treating Physicians' Testimony (Doc. 173)

Defendant's seventh motion *in limine* seeks to prohibit plaintiff's treating physicians from testifying at trial or, in the alternative, limiting the scope of their testimony to the subject matter contained in their medical records. Specifically, defendant points out that Dr. Gardner, Dr. Ricci, Dr. Schutzenhofer, and the unnamed persons from SSM Health Care, Barnes Jewish Hospital, St. Mary's Hospital, and Washington University School of Medicine "may testify regarding the

treatment of Plaintiff Jordan Queen, as well as his diagnoses and prognoses." (Doc. 140-5). Defendant goes on to argue that plaintiff's "treating physician expert disclosures that simply refer to medical records and nonexistent deposition testimony, and that do not provide specifics as to which health care provider will testify about which aspect of Queen's treatment, are deficient and do not comply with Fed.R.Civ.P. 26(a)(2)(C)." (Doc. 173). In response, plaintiff highlights that Dr. Gardner, was deposed on March 24, 2017, with leave of Court for the specific purpose of preserving the testimony for trial on account of him having left the St. Louis region. Dr. Miller's video deposition testimony was also taken for use during the trial. Furthermore, plaintiff notes that he does not believe that Dr. Gardner's and Dr. Miller's deposition testimony is the aim of the pending motion, but instead believes the motion applies to treaters or personnel, including Dr. Ricci, Dr. Schutzenhofer and "individuals not specifically identified from the various entities that have treated Plaintiff." Plaintiff goes on to state that he does not anticipate calling Dr. Ricci or Dr. Schutzenhofer, or any other employees of those entities that treated plaintiff during trial.

Upon review, the Court **GRANTS in part and DENIES in part** defendant's motion. Plaintiff's treating physicians, who have not rendered reports, will be limited to testimony within their personal knowledge concerning initial observations, diagnosis and treatment, as reflected in medical records. *See Musser v. Gentiva Health Servs.*, 356 F.3d 751, 757 (7th Cir.2004), *Meyers v. National R.R. Passenger Corp. (Amtrak),* 619 F.3d 729 (7th Cir. 2010). Any

treatment of Plaintiff Jordan Queen, as well as his diagnoses and prognoses." (Doc. 140-5). Defendant goes on to argue that plaintiff's "treating physician expert disclosures that simply refer to medical records and nonexistent deposition testimony, and that do not provide specifics as to which health care provider will testify about which aspect of Queen's treatment, are deficient and do not comply with Fed.R.Civ.P. 26(a)(2)(C)." (Doc. 173). In response, plaintiff highlights that Dr. Gardner, was deposed on March 24, 2017, with leave of Court for the specific purpose of preserving the testimony for trial on account of him having left the St. Louis region. Dr. Miller's video deposition testimony was also taken for use during the trial. Furthermore, plaintiff notes that he does not believe that Dr. Gardner's and Dr. Miller's deposition testimony is the aim of the pending motion, but instead believes the motion applies to treaters or personnel, including Dr. Ricci, Dr. Schutzenhofer and "individuals not specifically identified from the various entities that have treated Plaintiff." Plaintiff goes on to state that he does not anticipate calling Dr. Ricci or Dr. Schutzenhofer, or any other employees of those entities that treated plaintiff during trial.

Upon review, the Court **GRANTS in part and DENIES in part** defendant's motion. Plaintiff's treating physicians, who have not rendered reports, will be limited to testimony within their personal knowledge concerning initial observations, diagnosis and treatment, as reflected in medical records. *See Musser v. Gentiva Health Servs.*, 356 F.3d 751, 757 (7th Cir.2004), *Meyers v. National R.R. Passenger Corp. (Amtrak),* 619 F.3d 729 (7th Cir. 2010). Any

opinions that are not contained in the medical records or a Rule 26 report are barred.

8. **Defendant's Eighth Motion** *in Limine* **to Exclude Evidence, Testimony, Opinions, or Argument Concerning Whether it May Have Insurance (Doc. 174)**

Defendant's eighth motion *in limine* seeks to prohibit plaintiff from offering any evidence, testimony, opinions, or argument concerning whether defendant may have insurance. In his response, plaintiff does not object to defendant's motion *in limine* because "plaintiff does not intend on bringing up insurance absent defendant opening the door or otherwise making insurance relevant." (Doc 185). Thus, the Court treats this motion *in limine* as agreed and **GRANTS** the motion.

9. **Defendant's Ninth Motion** *in Limine* **to Exclude Evidence, Testimony, Opinions, or Argument in Front of the Jury that WW Industrial Corp. Engaged in Wrongful Conduct During Discovery (Doc. 175)**

Defendant's ninth motion *in limine* seeks to prohibit plaintiff from offering any evidence, testimony, opinions, or argument in front of the jury that WW Industrial engaged in wrongful conduct during discovery. In his response, plaintiff does not object to defendant's motion *in limine* because "plaintiff does not intend on bringing up that WW Industrial Corp. engaged in wrongful conduct during discovery absent defendant opening the door or otherwise making the issue relevant" (Doc 186). Thus, the Court treats this motion *in limine* as agreed and **GRANTS** the motion.

### 10. Plaintiff's First Motion *in Limine* to Exclude Evidence or Argument as to Liability, To Include Contributory Fault (Doc. 176)

Plaintiff's first motion *in limine* seeks to preclude any evidence, argument, and inference of issues of liability, to include contributory fault. In its response, defendant does not object to plaintiff's first motion *in limine* (Doc 196), as defendant understands that the Court has determined trial will be on damages only. Defendant notes that it "does not intend to offer evidence, argument, or inference regarding liability or contributory fault issues unless plaintiff opens the door to such evidence, argument, or issues." (*Id.*). Thus, the Court treats this motion *in limine* as agreed and **GRANTS** the motion.

### 11. Plaintiff's Second Motion *in Limine* to Exclude Evidence of Collateral Sources of Funds (Doc. 177)

Plaintiff's second motion *in limine* moves, pursuant to the collateral source rule, to preclude all evidence of collateral sources of funds used to pay plaintiff's medical expenses. Specifically, plaintiff argues that the collateral source rule does not allow for the amount of damages a plaintiff may be awarded to be decreased by the amount of payments received from an independent, collateral source in connection with his injury. See, e.g., *E.E.O.C. v. O'Grady*, 857 F.2d 383, 389–90 (7th Cir. 1988). In response, defendant requests permission to offer evidence that "Queen carries insurance through his employer, and that his medical bills might have been paid by that insurance in the event Queen, his attorneys, or his witnesses open the door to such evidence by suggesting Queen does not have the financial wherewithal to pay for BiFulco's recommended treatment" (Doc. 195).

Under the collateral source rule, the "benefits received by the injured party from a source independent of, and collateral to, the tortfeasor will not diminish damages otherwise recoverable from the tortfeasor." *Sterling Radio Stations, Inc. v. Weinstine*, 765 N.E.2d 56, 61 (Ill.App.Ct.2002)(explaining that "[t]he rationale behind this rule is that a wrongdoer should not benefit from expenditures made by the injured party, or take advantage of contracts or other relations which exist between the injured party and third persons"). The collateral source rule holds that a tort victim's damages shall not be reduced merely because all or part of his loss is covered by insurance or some other source of compensation. *Thomas v. Shelton*, 740 F.2d 478 (7th Cir. 1984); see also *Wills v. Foster*, 892 N.E.2d 1018, 1022-23 (Ill. 2008). Thus, *Arthur* explained that a plaintiff is entitled to recover as compensatory damages the reasonable expense of necessary medical care resulting from a defendant's negligence, even if the plaintiff's insurance has already paid a lesser amount for such services. Id. at 852–53 (emphasis added).

As to the collateral sources of payment, the Court fails to see any relevance of these collateral sources of funds to the issues at hand. Further, evidence of such payments will be inadmissible at trial because the evidence's probative value, if any, "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." Fed.R.Evid. 403. Therefore, the Court **GRANTS** plaintiff's motion *in limine* as to evidence of collateral sources of funds for the payment of plaintiff's medical expenses.

12. **Plaintiff's Third Motion** *in Limine* **to Exclude Evidence or Argument that a Judgment in Favor of Plaintiff Would Create a Financial Hardship for Defendant WW Industrial Corp (Doc. 178)**

Plaintiff's third motion *in limine* seeks to exclude any evidence or argument that a judgment in favor of the plaintiff would create a financial hardship for defendant. The Court agrees that such evidence and argument is not relevant and would only appeal to the sympathy of the jury. Any probative value is far outweighed by unfair prejudice. See Fed.R.Evid. 403. In its response, defendant does not oppose plaintiff's motion *in limine* (Doc. 196), Thus, the Court treats this motion *in limine* as agreed and **GRANTS** the motion.

13. **Plaintiff's Fourth Motion** *in Limine* **to Exclude Argument that Plaintiff is Seeking More Money Than He Expects to Win (Doc. 179)**

Plaintiff's fourth motion *in limine* seeks to exclude from evidence any argument by the defendant that plaintiff is seeking more money than he expects to win. The Court agrees that statements regarding why plaintiff filed this lawsuit are of little or no probative value, and the argument that plaintiff is seeking more money than he expects to win is improper. See *Rebolledo v. Herr-Voss Corp.*, 101 F. Supp. 2d 1034, 1036 (N.D. Ill. 2000)(Alesia, J.) citing *Kallas v. Lee*, 22 Ill. App. 3d 496, 317 N.E.2d 704 (1974). Thus, the Court treats this motion *in limine* as agreed and **GRANTS** the motion.

14. **Plaintiff's Fifth Motion** *in Limine* **to Preclude Defendant from Questioning Witnesses Regarding Future Surgery Without Foundation for Condition Predicate (Doc. 180)**

Plaintiff's fifth motion *in limine* seeks to preclude defendant from questioning witnesses about plaintiff's need for future surgeries without foundation for

condition predicate. Specifically, plaintiff argues that defendant should not be permitted to ask questions premised on an unsupported opinion that plaintiff only faces a 5% chance of needing ankle fusion surgery. In response, defendant argues that its attorneys should not be prohibited from asking other witnesses about Dr. Gardner's 5% probability for future surgery opinion "when Queen's counsel is unable to provide any alternative percentage and has only himself to blame for doing nothing to clarify whether Dr. Gardner's percentage applied to Queen." (Doc. 191). Based on the way the questions about future surgery were framed, the Court finds that it is a fair inquiry to make. Resolution of the dispute regarding the probability for future surgery goes to weight of the evidence, and is left to the jury's determination after opposing counsel has cross-examined the expert at issue. *Smith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir. 2000). Therefore, Court **DENIES** plaintiff's fifth motion *in limine.*

**15. Plaintiff's Sixth Motion *in Limine* to Exclude Evidence or Argument Evoking Prejudice Toward Hunters and Gun Owners (Doc. 198)**

Plaintiff's sixth motion *in limine* seeks to exclude evidence or argument that evokes prejudice toward hunters and gun owners. Specifically, plaintiff anticipates that defendant will attempt to introduce evidence or make arguments that convey or suggest that hunting is cruel to animals and that gun ownership is immoral. This issue came about following plaintiff's interpretation of a Facebook photo of the plaintiff, following a day out hunting, where he is pictured with a coyote and his hunting rifle (Doc. 198-1). Defendant disclosed said photo as a possible trial exhibit.

In response, defendant first notes that "WW Industrial distributes treestands, climbing systems, blinds, and other equipment and accessories for hunters to use while hunting. Were WW Industrial to argue hunters are cruel to animals or immoral or that gun ownership is a societal problem, it would impugn its entire customer base." (Doc. 199). Defendant goes to on argue that the photo is a critical piece of evidence that should be admitted at trial based on responses Queen gave during his December 30, 2014, deposition. Specifically, Queen was asked what he "physically could do before [his] accident that either [he] can't do now or that [he's] limited in doing." (Doc. 199-1). In response, Queen testified his ankle "limits me in almost everything I do. Like I said, walking, jogging, coaching, sports, hunting, fishing. You can't stand on a pond bank or something that I would, you know, typically do. I have to sit down. Like I said, working." (*Id.*).

Upon review of the motions and deposition, the Court **DENIES** plaintiff's motion as posed to the Court, because the photo at issue is a matter that is the subject of potential impeachment. Fed.R.Evid. 403 does not prohibit use of such evidence for impeachment purposes during trial. However, the Court notes that evidence used to simply disparage hunters and gun owners, generally, would not be relevant and will not be allowed.

16. **Plaintiff's Seventh Motion** *in Limine* **regarding Usual and Customary Charges for Medical Bills (Doc. 204)**

Following defendant's motion *in limine* regarding the unpaid medical bills (Doc. 168), which was addressed above, and the Court's September 5, 2017,

Order excluding the report and testimony of Santo Steven BiFulco (Doc. 200), plaintiff filed the pending motion *in limine* seeking permission from the Court to allow recently disclosed designees of the respective treatment providers to testify regarding plaintiff's medical bills in order to show that the bills reflect the usual and customary charges. Alternatively, plaintiff seeks to allow BiFulco's limited opinion in this regard. First, based on the Court's September 5, 2017 Order (Doc. 200), and the rationale set forth above, BiFulco is not permitted to offer an opinion regarding plaintiff's medical bills.

Looking now to the proposed designees of the respective treatment providers, plaintiff specifically seeks an Order permitting the designees of the treatment providers to testify, who previously executed supporting affidavits, to establish that plaintiff's medical bills reflect usual and customary charges (Doc 204-1). Defendant opposes plaintiff's motion and argues that plaintiff fails to show how the proposed records custodians are qualified to testify as to whether plaintiff's medical bills were reasonable and customary (Doc. 205). Defendant also opposes the motion arguing that the proposed records custodians are untimely supplemental expert witness disclosures proposed well after the expert disclosure deadline and after the Final Pretrial Order was entered. See *Anderson v. Procter & Gamble Paper Prod. Co.*, 2013 WL 5651802, at *3 (E.D. Wis. Oct. 15, 2013)(Griesbach, C.J.)(" It would be unfair under such circumstances to require the Defendant to spend time and energy the week prior to trial to accommodate a proceeding that could have occurred at any time in the last several years.")

"The rules regarding the admissibility of evidence of medical expenses and the burden of proving medical expenses are well established. In order to recover for medical expenses, the plaintiff must prove that he or she has paid or become liable to pay a medical bill, that he or she necessarily incurred the medical expenses because of injuries resulting from the defendant's negligence, and that the charges were reasonable for services of that nature." *Arthur v. Catour*, 216 Ill. 2d 72, 82, 833 N.E.2d 847, 853 (2005); *Baker v. Hutson,* 333 Ill.App.3d 486, 266 Ill.Dec. 791, 775 N.E.2d 631, 637–38 (Ill.App.Ct.2002). For purposes of recovering medical expenses in personal injury action, "a party seeking the admission into evidence of a bill that has not been paid can establish reasonableness of the bill by introducing the testimony of a person having knowledge of the services rendered and the usual and customary charges for such services. Once the witness is shown to possess the requisite knowledge, the reasonableness requirement necessary for admission is satisfied if the witness testifies that the bills are fair and reasonable." *Baker*, 333 Ill. App. 3d 486, 775 N.E.2d 631 (2002) citing *Diaz v. Chicago Transit Authority*, 174 Ill.App.3d 396, 123 Ill.Dec. 853, 528 N.E.2d 398 (1988). See also *Arthur*, 216 Ill. 2d at, 82, 833 N.E.2d at 853–54. Furthermore, expert testimony is required to establish that each unpaid medical bill is a "usual and customary" charge for such service, given that the average layperson does not have knowledge of the rates charged for

medical services in a particular area. See Fed.R.Evid. 702; *Battle v. O'Shaughnessy*, 2012 WL 4754747, at *4 (N.D. Ill. Oct. 4, 2012)(Lefkow, J); *Haack v. Bongiorno*, 2011 WL 862239, at *6–7 (N.D.Ill. Mar.4, 2011)(Nolan, J.); *Kunz v. Little Co. of Mary Hosp. & Health Care Cntrs.*, 869 N.E.2d 328, 338, 373 Ill.App.3d 615, 311 Ill.Dec. 654 (Ill.App.Ct.2007).

The Court notes that that plaintiff's proposed designees—Shelly Cooper, Amy Knolhoff, Charles Heidel, Tanya Ramierz, Alicia Bell, and Pamela Adams—are records custodians not qualified as experts in this case. Paintiff has failed to show that each possesses the requisite knowledge regarding the "usual and customary" charges for medical services. Thus, they may only testify as to what records are in the file, not to what medical expenses plaintiff necessarily incurred because of injuries resulting from the defendant's negligence, or what is a "usual and customary" charge. Therefore, the Court **DENIES** plaintiff's seventh motion *in limine*.

**IT IS SO ORDERED.**

Digitally signed by Judge David R. Herndon
Date: 2017.09.22 10:57:06 -05'00'

**United States District Court Judge**